UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANNAZ JABBARI,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>        Defendants. | Case No. 21-cv-01784-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Jabbari's second amended complaint pleads numerous claims arising out of her confinement in San Mateo County Jail in October 2020. The government defendants have moved to dismiss some, but not all, of those claims. This order assumes that the reader is familiar with the case.

The defendants do not challenge Jabbari's first section 1983 claim against Does 1–4 for excessive force.

Jabbari's second claim is for sexual assault. She identifies her cause of action as the California Penal Code, which does not provide a private right of action. But the question is whether she has stated a factual basis for a claim—not whether she has identified the correct cause of action. Her allegation that she was touched on the "buttocks and groin" during intake at the jail is inadequate to state a tort claim. Officers necessarily need to pat down arriving detainees, and she alleges nothing further. As alleged, therefore, this conduct does not give rise to any claim. But because the Court cannot rule out the possibility that Jabbari could state a claim (based on something other than the California Penal Code) with more specific allegations, this claim is dismissed without prejudice.

Next, Jabbari alleges that the jail's rule giving her a choice between being quarantined or having her temperature taken, wearing a mask, and taking a COVID test unlawfully burdened her exercise of religion under the Religious Land Use and Institutionalized Persons Act. She does not seem to allege that she initially communicated any religious objection to the jail staff such that they could have possibly known she was seeking a religious accommodation. (Nor could the jail have otherwise been on notice of her religious beliefs.) She does allege, or at least implies, that she eventually expressed a religious objection. In any event, these facts do not state a claim under RLUIPA because, at the time, the combination of temperature-taking, masking, and testing was the least restrictive means to accomplish the compelling government interest of preventing the spread of COVID in the jail. Jabbari did not have a right to opt-out of those requirements, even if they burdened her religion, because of the government's constitutional obligations to other detainees. *See Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) (affirming a preliminary injunction where the government "likely failed to meet its constitutional duty to provide reasonably safe conditions" for detainees); *Wilcox v. Lancour*, 20-cv-183, 2021 WL 230113, at *8 (W.D. Mich. Jan. 22, 2021) ("Defendants had a legitimate—indeed compelling—governmental interest in testing all prisoners for the presence of the SARS-CoV-2 virus, in order to meet its obligations to control contagion and to protect its other prisoners and staff."). This claim is dismissed with prejudice.

Jabbari's fourth claim is brought under the ADA for failure to accommodate. To the extent that she believes she should have been wholly exempt from the jail's COVID-containment program, or given an unspecified further accommodation, she fails to state a claim for substantially the same reason that her RLUIPA claim fails. Exemption would fundamentally alter the nature of the program and would likely not be a reasonable accommodation in light of the jail's obligations to staff and other detainees. If that were the extent of her ADA claim, it would be dismissed with prejudice. However, Jabbari alleges that on one occasion while in quarantine, she was instructed to wear a mask by a visiting nurse who informed her that the jail did not allow exemptions. Jabbari does not allege that she was actually forced to wear a mask; nor does she

2

otherwise set forth the necessary factual basis for some narrower ADA claim. For those reasons, this claim is dismissed. It is doubtful that Jabbari would be able to state a claim with more facts, but out of an abundance of caution, dismissal of this claim is without prejudice.

The government does not challenge Jabbari's fifth claim, regarding denial of phone calls.

Jabbari styles her sixth claim as "denial of arraignment without unnecessary delay." This claim is brought against the sheriff and the county, so it is a *Monell* claim. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The government argues only that there is no private right of action under the California statute requiring an arraignment within 48 hours. But Jabbari does not rely on that statute as her cause of action; she argues that the statute creates a protected liberty interest under the due process clause. There is Ninth Circuit precedent in support of that contention, and section 1983 then provides her cause of action. *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1475 (9th Cir. 1992) (holding that a similar Oregon statute created a protected liberty interest). At some point, a delayed or withheld initial appearance violates due process. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) (assuming without deciding that a long enough detention without a court appearance can be a due process violation, but holding that three days over a holiday weekend was insufficient); *Oviatt ex rel. Waugh*, 954 F.2d at 1472–79 (inadvertent 114-day detention was a violation of procedural due process); *Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir. 1985) (18-day detention was a due process violation); *Armstrong v. Squadrito*, 152 F.3d 564, 567, 569 (7th Cir. 1998) (inadvertent 57-day detention that "shock[ed] the conscience" was a violation of substantive due process).

Jabbari alleges that she was jailed on October 20th and did not have a court appearance until October 30th, when the charges against her were dropped and she was ordered released. In the interim, she alleges that the jail canceled two court appearances because she was refusing COVID tests. And she alleges that she was told that she could not have a court appearance, even by Zoom or by phone, unless she took a test. (She further alleges that the October 30th hearing only went forward because her attorney had figured out that she was in jail and requested that she be allowed to participate by phone.) Exactly how the due process analysis should go is not

necessary to decide at this stage, especially given the paucity of briefing on the issue. Jabbari alleges that she was held for ten days under a policy of canceling initial appearances for detainees who did not comply with COVID procedures. That is sufficient to state a *Monell* claim for a due process violation.

Jabbari's seventh claim is for denial of access to courts and counsel. She alleges that she would have seen her lawyer earlier if her initial appearance had not been delayed. There is a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). But the right requires a showing a lack of a reasonably adequate opportunity to pursue direct appeals from a conviction or to bring a civil rights action. *Id.* at 350, 354. The kind of delay alleged in this case is insufficient, so this claim is dismissed with prejudice.

The defendants do not challenge Jabbari's eighth claim, for denial of adequate medical care.

The ninth claim, for denial of the right to refuse medical treatment, is dismissed with prejudice. Even accepting the very dubious assertion that blood pressure, pulse, and temperature measurements are medical care, she did not have a right to refuse them. Jails may do routine intakes. And in October 2020, temperature checks were part of the least restrictive means of accomplishing the compelling government interest of preventing the spread of COVID in the jail.

Jabbari's tenth claim alleges that putting her in quarantine without a hearing was a violation of her due process rights in a disciplinary proceeding. Pretrial detainees may not be punished without a hearing. *Mitchel v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). Jabbari argues that her quarantine was punishment because the jail described it as the result of a "rule violation" and because jail staff noted that the policy was an effective way of convincing detainees to consent to COVID tests. But the question is not one of labeling; the question is whether the "purpose and effect of . . . segregated confinement was punishment." *Id.* Construing the allegations liberally and in the light most favorable to Jabbari, she does not adequately allege that the purpose or effect of her quarantine was punishment. Nor could she: The policy as she describes it is simply one of quarantining detainees until they either take a test or until sufficient

4

time has passed to be sure they do not have COVID. This claim is dismissed with prejudice.

Jabbari's eleventh claim is for retaliation. While most of her retaliation theories are deficient, as they simply recast her problems with jail policy as retaliation, she has successfully stated a claim. Her basic allegation is that the jail required new arrivals to either take a COVID test or spend 21 days in quarantine. She alleges that she refused to test because of her religion and disability—that is, she opted for the quarantine option presented by the policy (whether she was happy about it or not). Then she alleges that she was retaliated against because of her decision. Not by the quarantine itself, but by the conduct of jail staff—one of whom allegedly brought her a blanket she had requested but then taunted her with it and told her she could have it only if she agreed to wear a mask. Those facts state a claim for retaliation. The final question is against whom she brings this claim. To the extent it is a *Monell* claim against the sheriff and County, she has not alleged a policy of retaliation and it is dismissed without prejudice. However, to the extent that it is a retaliation claim against an unidentified officer—one of the four Does—the claim can go forward. The complaint is not very clear on this point. But as Jabbari is pro se and opposing a motion to dismiss, the complaint must be liberally construed in the light most favorable to her.

Jabbari sets out several additional *Monell* claims. She lists these under the heading "Inadequate Training and Supervision," but she alleges policies or customs, not inadequate training and supervision. Two of these claims are essentially unchallenged by the defendants at this stage: denial of phone calls and denial of medical treatment (which Jabbari lists twice). The other three are dismissed without prejudice: She does not allege any specific facts, other than her own experience, regarding a policy or custom of excessive force, "aggressive tactics" to coerce compliance with COVID rules, or denial of access to courts or counsel.

Jabbari's final two claims are for conspiracy to deprive her of her rights and neglect or refusal to prevent such a conspiracy. 42 U.S.C. §§ 1985, 1986. She has not stated a claim under section 1985 because she does not allege an agreement to deprive her of her rights; a policy is not a conspiracy. Without a section 1985 claim, she cannot state a section 1986 claim. These

claims are dismissed without prejudice.

If Jabbari wishes to file an amended complaint, she must do so within 14 days of this order. If no amended complaint is filed, the lawsuit will go forward on the remaining claims, and an answer to the remaining claims in the complaint is due 21 days after this order.

**IT IS SO ORDERED.**

Dated: February 17, 2023

_____

VINCE CHHABRIA
United States District Judge